UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EBENEZAR PANNIKADAVIL,

                                         Plaintiff,              04 Civ. 8916 (RPP)

                  - against -                                **OPINION AND
                                                                ORDER**

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and CAROL RABOY-BRAUNSTEIN,

                              Defendants.

------------------------------------------------------------------------X


**ROBERT P. PATTERSON, JR., U.S.D.J.**

          Defendants, New York City Health and Hospitals Corporation ("HHC") and

Carol Raboy-Braunstein ("Raboy-Braunstein")[1], move pursuant to Rule 56 of the Federal

Rules of Civil Procedure for summary judgment to dismiss the Complaint filed by

Plaintiff, Ebenezar Pannikadavil, on November 10, 2004.  The Complaint alleges: 1)

employment discrimination based on Plaintiff's race (Asian) and national origin (Indian);

2) hostile work environment on the same bases; and 3) retaliation in violation of

Plaintiff's equal rights pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of

1964 as amended by 42 U.S.C. § 2000e et seq., and New York State Common Law.[2]

---

[1] Plaintiff names Carole Raboy-Braunstein as a Defendant only under state law. (Compl. ¶ 1.)  "Individual
defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."
Tomka v. Seiler, 66 F.3d 1295, 1313 (2d Cir. 1995)
[2] The Complaint does not specify under what area of New York Common Law Plaintiff seeks relief.
However, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment
indicates Plaintiff seeks relief under New York State Human Rights Law. (Pl.'s Mem. at 1.)  Since New
York Human Rights Law is analyzed using the same standards as Title VII, both claims will be analyzed
jointly. See Smith v. Xerox Corp., 196 F.3d 358, 363 n.1 (2d Cir. 1999) (holding that a federal court can
address New York State Human Rights Law employment discrimination claims using the same analysis as
Title VII claims) (citing Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999)).

(Compl. ¶ 2.)  For the reasons that follow, Defendants' motion is granted in part, and denied in part.

## I.    BACKGROUND

Plaintiff has been employed as a provisional Laboratory Microbiologist B by Defendant HHC since 1997, and he was initially assigned to work at Lincoln Hospital Center. (Compl. ¶ 8.)  In July 1999, Plaintiff was involuntarily transferred to Bellevue Hospital. (Compl. ¶ 10.)  At various times discussed in further detail <u>infra</u>, Plaintiff alleges that he applied for promotion to Associate Laboratory Microbiologist B.  (Compl. ¶¶ 5-7, 13.) Defendant Raboy-Braunstein was the Associate Executive Director of the Pathology Department at Bellevue Hospital since the time of Plaintiff's transfer to Bellevue until December 2004, when she left Bellevue Hospital. (Compl. ¶ 11; Defs.' Ex. D (Raboy-Braunstein Dep.) 7.)  Kara Breznak and Laura Malloy were two white, female co-workers of Plaintiff at Bellevue Hospital. (Compl. ¶ 15.)

Defendants' Local Civil Rule 56.1 Statement sets forth what Defendants assert are the undisputed facts in this case, supported by citations to the evidence as required under the rule.  Plaintiff's Local Civil Rule 56.1 Response Statement, although prepared by counsel, cites to no evidence in support of its denials. <u>See</u> Local Civil Rule 56.1(d) ("each statement by the movant or opponent…including each statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)").[3]

---

[3] Rather than striking the Plaintiff's responses to the motion for failure to comply with Local Rule 56.1, this Court has conducted an independent review of the record submitted to address the merits of the Plaintiff's response papers as submitted.  <u>See</u> <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) ("Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination'") (quoting <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)).

Defendants' 56.1 Statement and Plaintiff's Rule 56.1 Responses are as follows:[4]

1.      "Plaintiff has been employed as a Laboratory Microbiologist B with HHC since 1997. When hired he was assigned to Lincoln Hospital. <u>See</u> Exhibit 'B' at 18 (Pannikadavil Dep. Tr.)."[5] Plaintiff's response: "Admits."

2.      "In 1999, plaintiff, along with several other employees, was involuntarily reassigned from Lincoln Hospital to Bellevue Hospital Center. <u>See</u> Exhibits 'G,' and 'H,' respectively (Letter from HHC to plaintiff, dated June 24, 1999, concerning involuntary reassignment to Bellevue; letters to various other employees, dated June, 1999, concerning involuntary reassignments to Bellevue)." Plaintiff's response: "Admits."

3.      "This involuntary transfer was based on a decision made by the Network leadership of Generations Health Network and South Manhattan Health Network to transfer the laboratory work from Generations to South Manhattan. <u>See</u> Exhibits 'G' and 'H.' (Letter to plaintiff concerning involuntary reassignment to Bellevue and Letters to various other employees concerning involuntary reassignments to Bellevue)." Plaintiff's response: "Plaintiff does not know why the transfers took place."

---

[4] Defendants' 56.1 Statement is reproduced in quotation marks and with citations. Plaintiff's responses immediately follow the Defendants' statements in each numbered paragraph.
[5] Defs.' 56.1 includes the following footnote at the end of its ¶ 1: "All references to 'Exhibit' are to the [Defendants'] exhibits annexed to the declaration of Rippi Gill, dated May 18, 2007, ('Gill Decl.')."

Since Plaintiff does not specifically controvert Defendants'
statement, Plaintiff's response constitutes an admission under
Local Rule 56.1(e). See also Gubitosi v. Kapica, 154 F.3d 30, 31
n.1 (2d Cir. 1998) (deeming facts in defendant's Local Rule 3(g)
— since renumbered Local Rule 56.1 — statement admitted as a
matter of law as a result of plaintiff's failure to respond to the
statement.[6])

4.      "The laboratories were transferred and the personnel who worked in
those laboratories."[7] Plaintiff's response: "Plaintiff does not know if
the entire labs were transferred nor whether the employees were all
transferred." This response constitutes an admission under Local Rule
56.1 because it does not specifically controvert Defendants' statement.
See supra, at ¶ 3.

5.      "Plaintiff was reassigned to the same title, with the same pay. He was
advised, by letter dated June 24, 1999, that he was being involuntary
[sic] transferred effective July 6, 1999, to Bellevue, Pathology
Department in the title of Laboratory Microbiologist B, and assigned to
the 4pm to 12am shift. See Exhibit 'B' at 60 (Pannikadavil Dep. Tr.);
Exhibit 'G.'" Plaintiff's response: "Admits."

6.      "Plaintiff concedes that he did not apply for a promotion for the position
of Associate Laboratory Microbiologist from 1997 to 2004. See Exhibit

---

[6] Here, while Plaintiff does offer a 56.1 response, he merely states that he does not know the reason for the
transfers, and he does not controvert the Defendants' facts in this paragraph, giving his response the same
effect as offering no response.
[7] Paragraph 4 of Defs.' 56.1 Statement uses id. to cite the same record documents as ¶ 3. It is omitted here
to avoid confusion with the Court's use of id., also in ¶ 4, for a case citation.

'B' at 84 (Pannikadavil Dep. Tr.); Exhibit 'C' at 53–55 (Pannikadavil Dep. Tr.)." Plaintiff's response: "Deny."

7.      "Plaintiff claims that he applied for promotions to the position of Associate Laboratory Microbiologist on two occasions in 2004 and 2005. See Exhibit 'B' at 74–77 (Pannikadavil Dep. Tr.)." Plaintiff's response: "Admits."

8.      "Plaintiff concedes that the first and only time he applied to take the civil service examination for the position of Associate Laboratory Microbiologist occurred in February, or March, 2006. See Exhibit 'B' at 78 (Pannikadavil Dep. Tr.)." Plaintiff's response: "Deny."

9.      "While at Bellevue, two of plaintiff's female co-workers, Laura Molloy and Kara Breznak, both brought complaints stating that plaintiff was harassing them and making inappropriate comments, and following them. See Exhibit 'I' (Molloy Complaint [dated 2/4/02]);[8] Exhibit 'J' (Breznak Complaints [dated 3/11/02, 12/17/02, and 12/19/02])." Plaintiff's response: "Admits."

10.     "The complaints were thoroughly investigated. In fact, several meetings were held, where all parties involved, including plaintiff, had the opportunity to explain their views of the facts. At the conclusion of the investigation, all parties were notified that they were required to interact with each other using only the 'highest standard of professional conduct and only regarding business related matters.' Exhibit 'K

_____

[8] Molloy also filed complaints against Plaintiff around 12/4/03 and 12/8/03, resulting in her no longer being scheduled on the same shift as Plaintiff as of April 10, 2004. (Id.)

[meetings held on 1/30/02; 1/31/02; 2/1/02; and 2/6/02].'" Plaintiff's response: "Deny."

11.     "All parties, including plaintiff, were advised that 'harassment or discriminatory remarks are clearly against the policy protecting persons' at HHC. Id." Plaintiff's response: "Deny that all parties were so advised but admits that Plaintiff was advised."

12.     "In an effort to maintain harmony within the laboratory, it was determined that in the best interest of the hospital, that plaintiff's shift be changed in order to ensure that he [no][9] longer be working the same shift as Ms. Molloy and Ms. Breznak. See Exhibit 'I' (at NYU Letter [dated April 20, 2004][10] noting the necessity of the shift change); Exhibit 'D' at 23 (Raboy-Braunstein Depo. Tr.)." Plaintiff's response: "Admits that the shift was changed but denies that it was done in the best interest of the hospital."

13.     "Plaintiff's shift was changed from the 4 p.m. to 12 a.m. shift to the 8 a.m. to 4 p.m. shift for just over three months, from December 30, 2002 until April 9, 2003, when his request to return to the 4 p.m. to 12 a.m. shift was granted. See Exhibits 'L,' 'M,' and 'N.'" Plaintiff's response: "Admits that shift was changed but deny [sic] that request to have it changed to original shift is denied. That is because the request was made when the shift was first changed. By the time plaintiff was

[9] The original version of Defs.' 56.1 is missing this "no" — an apparent typographical error.
[10] Although Defendants' citation to Exhibit D (Raboy-Braunstein's deposition testimony) is correct in that it shows the reasoning behind Plaintiff's shift change in December 2002, Defendants' citation to Exhibit I is incorrect in that Exhibit I refers to a subsequent complaint in December 2003 by Molloy dated April 20, 2004.

returned to original shift, adjustments had been made regarding my

family arrangements.  Plaintiff had settled in to the new shift and had to

redo and undo family arrangements." This response, while unclear, does

not specifically controvert Defendants' statement, and therefore is an

admission.  See Local Rule 56.1(e); Gubitosi v. Kapica, supra.  Plaintiff

also fails to cite any evidence in support of these assertions.

14.     "Plaintiff's one and only administrative charge of discrimination was

filed with the United States Equal Employment Opportunity

Commission [EEOC] on October 14, 2003.  See Exhibit 'F.'" Plaintiff's

response: "Admits."[11]

The allegations in Defendant's Rule 56.1 Statement that Plaintiff has admitted, or

has not specifically controverted are deemed admitted under Rule 56.1.  Accordingly, this

opinion will examine the Plaintiff's affidavit in opposition to the motion, as well as his

deposition transcripts, to determine the validity of the denials in paragraphs 6, 8, 10-12,

and the factual issues raised by paragraphs 7 and 13 regarding whether the Plaintiff was

discriminated against based on his race or national origin when he applied for promotion

and when Defendants changed his shift; and whether the Defendants allowed him to be

subjected to a hostile work environment based on his race or national origin.

During discovery, Plaintiff was deposed in two sessions on August 15, 2006, and

on September 29, 2006. (Defs.' Ex. B; Defs.'s Ex. C.)  In conjunction with his opposition

to Defendants' motion for summary judgment, Plaintiff filed a lengthy answering

affidavit, dated September 6, 2007.  Some statements in this affidavit conflict with

---

[11] EEOC issued Plaintiff a notice of right to sue (right-to-sue letter) dated September 1, 2004. (Decl. in
Opp'n to Mot. Ex. B.)

Plaintiff's deposition testimony. To the extent the deposition testimony and the affidavit

conflict, the Court will credit the deposition testimony, because the Plaintiff has offered

no evidence showing that he corrected his deposition transcripts. <u>See</u> Fed. R. Civ. P.

30(e).[12] It is a "well-settled rule in this circuit that a party may not, in order to defeat a

summary judgment motion, create a material issue of fact by submitting an affidavit

disputing his own prior sworn testimony." <u>Margo v. Weiss</u>, 213 F.3d 55, 60 (2d Cir.

2000) (internal citations and quotation marks omitted).

## II.    DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only where "there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). When considering a motion for summary judgment, this Court must

view the facts in the light most favorable to the nonmoving party, and draw all reasonable

inferences in its favor. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986). Summary

judgment is inappropriate if, after resolving all ambiguities and drawing all inferences

against the moving party, there remains a dispute about a material fact "such that a

reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

Furthermore, courts must be "particularly cautious about granting summary

judgment to an employer in a discrimination case when the employer's intent is in

question." <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997). Courts must

undertake a careful review of affidavits and depositions for circumstantial evidence that,

---

[12] The rule, in relevant part, states: (1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them. Fed. R. Civ. P. 30(e).

"if believed, would show discrimination." Id. Nonetheless, to survive a motion for summary judgment, "a plaintiff must provide more than conclusory allegations of discrimination." Id.

## C. Claims for Failure to Promote

### 1. Title VII's Time Period Limitation for Failure to Promote Claims

Under Title VII, individuals claiming discrimination for discrete discriminatory acts, such as failure to promote, must file a discrimination charge with the EEOC within 300 days of the date of the alleged incident of discrimination or retaliation.[13] AMTRAK v. Morgan, 536 U.S. 101, 113 (2002). In Morgan, the Supreme Court held:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. [Plaintiff] can only file a charge to cover discrete acts that occurred within the appropriate time period. While [plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through…the date that he was fired, only incidents that took place within the timely filing period are actionable. Because [plaintiff] first filed his charge with an appropriate state agency, only those acts that occurred 300 days before…the day that [plaintiff] filed his charge, are actionable…All prior discrete discriminatory acts are untimely filed and no longer actionable.

AMTRAK v. Morgan, 536 U.S. 101, 114-115 (2002)

Here, Plaintiff filed his EEOC charge on October 14, 2003. Accordingly, Plaintiff's claims for failure to promote that occurred before December 19, 2002 are time-barred.[14,15]

---

[13] Because New York has an agency with "authority to grant or seek relief from" employment discrimination, the limitations period is 300 days. 42 U.S.C. § 2000e-5(e)(1). See Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

[14] Since Plaintiff filed his EEOC Charge on October 13, 2003, received a right to sue letter dated September 1, 2004, and filed the complaint in this action on November 10, 2004, Plaintiff has not exhausted his EEOC remedies with regard to his claims for failure to promote in December 2004 and October 2005. See Butts, 990 F.2d at 1401 ("A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge. This exhaustion requirement is an essential

2. *The Merits of Plaintiff's Timely Failure to Promote Claim*

With regard to Plaintiff's failure to promote claims that have been timely brought, the Plaintiff must establish a prima facie case of employment discrimination under the burden-shifting analysis established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  Plaintiff must meet the following four requirements:

(i)     that he belongs to a racial [or national origin] minority;
(ii)    that he applied and was qualified for a job for which the employer was seeking applicants;
(iii)   that, despite his qualifications, he was rejected; and
(iv)    that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

<u>McDonnell Douglas Corp. v. Green</u> at 802.

Here, the Plaintiff meets the first requirement of establishing a prima facie case of discrimination because he is Asian and of Indian origin. (Pannikadavil Aff. ¶ 5.)  The Court will assume, for purposes of this opinion, that his background and experience meet the qualifications for promotion to Associate Laboratory Microbiologist B.[16]  To establish

---

element of Title VII's statutory scheme.")  Because these alleged failures to promote occurred after the EEOC completed its investigation, they are not reasonably related to his EEOC charge and the Court will not consider them as discriminatory acts here; however, they will be analyzed <u>infra</u> in the context of Plaintiff's retaliation claim.

[15] With respect to his claim of failure to promote in 1999, Plaintiff incorrectly argues that the clock should begin to run not when the act occurred, but rather when he learned some years later of its discriminatory character. (Pl.'s Mem. of Law in Opp. to Summ. J. at 18.)  The Supreme Court has held that a plaintiff must file an EEOC charge within 300 days "after each allegedly discriminatory employment decision was made and communicated to [the plaintiff]."  <u>See</u> <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162, 2169 (2007).  "By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."  <u>Id.</u> at 2171-72.

[16] Defendants argue that Plaintiff was not qualified for promotion because he had "not yet taken the civil service examination for this title, which is the only method of permanent promotion to the title"[16] (Defs.' Mem. of Law at 8).  Defendants, however, assert that "a provisional promotion is a temporary 'stop gap' promotion meant to last until a new civil service examination can be administered and promotions made from among those who pass that examination," which is an admission that such appointments are made (<u>Id.</u> at 8, at n.4.)

a prima facie case of discrimination under <u>McDonnell Douglas Corp. v. Green</u>, however, Plaintiff must show that he applied for and was rejected from an available position.

It is undisputed that: 1) Plaintiff was first employed by HHC in 1999; 2) that while working at Lincoln Hospital Center, Plaintiff's immediate supervisors recommended that he be promoted to Associate Laboratory Microbiologist B; and 3) that before he submitted his application for promotion at Lincoln Hospital Center, Plaintiff was involuntarily transferred to Bellevue in July 1999. Upon his transfer to Bellevue, Plaintiff presented his notice of transfer to Defendant Raboy-Braunstein, and explained that his promotion was pending. (Defs.' Ex. B. (Pannikadavil Dep.) 67–68.) According to the Plaintiff, Raboy-Braunstein told Plaintiff that he would not be promoted at that time, because "people working 25 years, more than 15, 20 years here, they don't have my title. Because of that she cannot promote me, that's the way she said it, she denied." (<u>Id.</u> at 68.) In any event, Plaintiff does not provide any evidence that he formally submitted his application to Raboy-Braunstein at that time.

Without any citation, paragraph 6 of Plaintiff's Rule 56.1 Response denies Defendants' assertions that he failed to apply for a promotion to Associate Laboratory Microbiologist from 1997 through 2004. Accordingly, the Court has reviewed his deposition testimony (Defs.' Exs. B and C) to determine whether his denial is supported by the record. Plaintiff testified that "between this time, the '99 [sic] and 2003 I went to Mr. Persaud, my lab manager, for the promotion to recommend me for the promotion several time [sic]. He told me in front of other co-workers that, Roy [Plaintiff's nickname[17]], I can't give you the promotion, I just follow what Mrs. Braunstein said. If

_____

[17] Plaintiff explains in his deposition that, "I have a nickname called Roy because my name is pretty long." (Defs.' Ex. B (Pannikadavil Dep.) 137.)

you go there she will promote you." (Defs.' Ex. B (Pannikadavil Dep.) 104.)  Twice

during his deposition, Plaintiff denied applying for promotion between 1999 and 2003.

In response to the question "did you ever go to Ms. Braunstein between 1999 and 2003 to

ask about the promotion," Plaintiff unequivocally responded "no."  (Id. at 81.)  Then,

when asked "did you ever formally apply for any promotion to associate laboratory

microbiologist between 1999 and 2003, formally?" Plaintiff responded "I did not." (Id. at

84.)  Accordingly, the evidence shows that Plaintiff did not apply for promotion between

1999 and 2003.[18]

*Application for Promotion in September 2003*

By letter dated September 10, 2003, Plaintiff requested promotion to Associate

Laboratory Microbiologist B. (See Compl., Ex. A.)  The letter was addressed to Raboy-

Braunstein and, according to Plaintiff, he delivered the letter to her office. (Defs.' Ex. B

(Pannikadavil Dep.) at 79–80.)   Subsequently, a human resources official, Brenda

Chapman, called Plaintiff to follow up on the letter. (Id. at 80.)  According to Plaintiff, he

was told, "when the position come [sic] they will accommodate [his request]." (Id.)

This, however, is not a rejection of his request for promotion.  Although Plaintiff

has provided the Court with a list of HHC employees promoted to the position of

Associate Laboratory Microbiologist B (Attorney Declaration in Opposition to

Defendant's [sic] Motion to Dismiss[19] [sic] (Decl. in Opp'n to Mot.), Ex. H.), there is no

evidence in the record that there was a vacancy for the position of Associate Laboratory

Microbiologist B when Plaintiff applied for promotion by letter dated September 10,

---

[18] Defendants maintain that Plaintiff's actions between 1997 and 1999 did not amount to an application for promotion. (Defs.' Mem. at 6-7.)  However, any factual dispute on this issue need not be resolved because of the time period limitation of 300 days discussed supra.

[19] This is a motion for summary judgment, and Plaintiff's counsel apparently made a typographical error in referring to it as a motion to dismiss.

2003; nor is there evidence showing that another person was promoted to Associate Laboratory Microbiologist B from September 10, 2003 until October 14, 2003, when he filed his claim with the EEOC.[20] (See Decl. in Opp'n to Mot., Ex. H.)  Therefore, because Plaintiff has provided no evidence that he was rejected from an available position when he applied for promotion on September 10, 2003, he fails to meet the third requirement of establishing a prima facie case of discrimination under McDonnell Douglas Corp. v. Green.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's claims of failure to promote is granted.

**E. Hostile Work Environment Claim**

*a)  Plaintiff's Claim is Time-Barred under a Continuing Violation Analysis*

In Morgan, the Supreme Court held that a hostile work environment claim can be analyzed as a continuing violation.  Morgan, 536 U.S. at 117.  If at least one "act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," even if some acts are outside the filing period. Id.

Kara Breznak and Laura Malloy were two white, female co-workers of Plaintiff at Bellevue Hospital, and Plaintiff's opposing affidavit describes many alleged altercations with these two co-workers in the hematology laboratory.  Plaintiff argues that "[a]ll of the acts involving Laura Molloy and Kara Breznak constitute hostile work environment" (Pl.'s Mem. of Law at 13), and that "Raboy-Braunstein's failure to act on his complaints

---

[20] Furthermore, Plaintiff's list of HHC employees promoted to Associate Laboratory Microbiologist B shows that those who received promotion to that title prior to September 10, 2003 had seniority over Plaintiff. (See Decl. in Opp'n to Mot., Ex. H.)

against Ms. Molloy and Mrs. Raboy-Braunstein[21] as being [sic] discriminatory." (Pl.'s Mem of Law at 15.) As noted above, Plaintiff filed his EEOC complaint on October 14, 2003, and the record shows that all of the incidents involving Breznak and Malloy, which Plaintiff alleges caused a hostile work environment, occurred before December 19, 2002,[22] and therefore do not fall within the applicable filing period of 300 days before Plaintiff filed his EEOC charge. Accordingly, Plaintiff's claim for a hostile work environment is time-barred.

b) *Plaintiff's Hostile Work Environment Claim Fails on the Merits*

It is well-settled that in order for a hostile work environment claim to survive a motion for summary judgment, a plaintiff must satisfy a two-pronged test: 1) "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and 2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations omitted). See also Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999).

Here, Plaintiff has not satisfied the second prong of the test to show that the allegedly hostile incidents of Breznak and Malloy can be imputed to Defendants.[23] The Second Circuit has held:

> [t]he harassment which led to the hostile work environment was attributable to a co-worker, not a supervisor. [Plaintiff], therefore, must demonstrate that [the

---

[21] This appears to be one of many typographical errors in Plaintiff's Memorandum. Presumably, Plaintiff means he complained to Raboy-Braunstein about Breznak and Molloy, not Breznak and Raboy-Braunstein.

[22] Although the January 28, 2003 meeting and the shift change of which Plaintiff was notified on December 20, 2002, (both discussed infra) occurred after December 19, 2002, Plaintiff does not allege that these events caused a hostile work environment.

[23] Because Plaintiff fails to demonstrate that a basis exists for imputing the objectionable conduct to the employer, the Court does not analyze whether the alleged conduct was sufficiently severe or pervasive enough to alter Plaintiff's work environment.

employer] either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.

See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)

The record is clear that on several occasions Plaintiff pursued several available avenues to complain about the alleged incidents involving Breznak and Malloy, and supervisors subsequently took prompt action to remedy the tension.

For example, Plaintiff testified that when Breznak called him an "idiot," he "complained to the supervisor immediately and the supervisor, Mr. [Amin] Upendra, addressed that issue." (Pannikadavil Dep. (Ex. B) at 123.)  Plaintiff also testified that on another occasion when Breznak slammed a specimen on the table and screamed at him, he "called the supervisor and notified them [sic], Mr. Upendra called her and I think he counseled her, he talked to her about that inappropriate comment and remark." (Id. at 124.)  Plaintiff described another incident in which Breznak hung up the phone on Plaintiff when he called to speak to a supervisor. (Id. at 130.)  In response, Plaintiff went to two supervisors, Mr. Upendra and Ms. Marva Newland, who "called Kara Breznak to the office and counsel [sic] her and warned her not to do something like that." (Id. at 130-131.)  Plaintiff also that testified "every incident [Breznak] done [sic] to me, I notified the supervisor right away." (Id. at 127.)   Finally, Plaintiff also admitted in his opposing affidavit that, in response to his complaints, meetings were held by supervisors, and Breznak was made to apologize to Plaintiff. (Pannikadavil Aff. ¶ 31.)  Thus, Plaintiff's testimony and affidavit do not demonstrate that Defendant HHC "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d at 715.

Plaintiff's Rule 56.1 Response denies that there was a thorough investigation of the internal HHC complaints by and against him, and he denies that "all parties" received notification of required standards of behavior at the conclusion of the investigation, but Plaintiff cites no evidence as required by Local Rule 56.1(d).

Plaintiff did testify that on February 7, 2002, following meetings over the Plaintiff's and Breznak's cross-complaints, Raboy-Braunstein issued Plaintiff a memorandum warning of his possible termination.  (Defs.' Ex. B (Pannikadavil Dep.) 132–34.)  Plaintiff denies that "all parties" were so advised (Pl.'s 56.1 Response at ¶ 11); however, the record includes a memorandum addressed to Kara Breznak, dated February 7, 2002 (Defs.' Ex. K), instructing her on appropriate behavior standards for HHC employees, and warning Breznak that "any future behavior similar to that discussed will result in further disciplinary action up to and including termination." (Id.)  This memorandum shows that Breznak--the person Plaintiff complained about most in these alleged incidents--received the same behavior instructions as Plaintiff.[24]  The memorandum to Breznak specifically states that meetings were held on January 30, 2002, January 31, 2002, February 1, 2002, and February 6, 2002 regarding incidents that took place in the hematology laboratory, and that Defendant HHC "clearly stated in previous memos sent to **all staff** that harassment or discriminatory remarks are clearly against the policy protecting persons on the Health & Hospitals Corporation premises." (Id.) (emphasis added.)  Thus, the record is clear that supervisors at HHC investigated

---

[24] Defs.' 56.1 suggests that "[a]ll parties" received this instruction.  Plaintiff admits that he received it, but he contends that not everyone received it.  While it is unclear exactly who Defendants meant by "all" parties, the record is clear that *more than only* the Plaintiff received the memorandum.  Therefore, it is unnecessary to determine who exactly Defendants meant because it is clear that Plaintiff was not individually targeted, let alone on the basis of his race or national origin.

complaints made by and against the Plaintiff, and that HHC issued memoranda regarding behavior standards at work to HHC employees, including the Plaintiff and Breznak.

### 1) Plaintiff's Shift Change

Despite the efforts of HHC supervisors to address tension in the hematology laboratory, Raboy-Braunstein changed Plaintiff's work shift from the 4 p.m. to 12 a.m. shift to the 8 a.m. to 4 p.m. shift, informing him of those changes by two memoranda dated December 20, 2002 and December 23, 2002. (Defs.' Ex. L; Defs.' Ex. M.) The shift change was in effect from December 30, 2002, through April 9, 2003. (Defs.' Ex. M; Defs.' Ex. N.) When asked why she changed Plaintiff's shift, Raboy-Braunstein testified that "there were some issues that arose within the lab and we felt that for everyone involved, this would be the best thing to do for all involved." (Defs.' Ex. D (Raboy-Braunstein Dep.) at 23.) Plaintiff testified that when he asked Raboy-Braunstein why she had changed his shift, she told him that she was changing it because he had threatened a female colleague's life. (Defs.' Ex. B (Pannikadavil Dep.) 107.) In fact, by two letters dated December 17, 2002 and December 19, 2002, Breznak had formally complained that "every time I turn around, [Plaintiff] is watching me and following me…[and] I feel that this is an unsafe working environment." (Defs.' Ex J at 1.)

Shortly after notification of his shift change, Plaintiff filed two grievances, both dated December 26, 2002, with Bellevue's labor relations office, alleging that Raboy-Braunstein had discriminated against him and that the ordered shift change would "interfere with [his] family life and [his] abilities to fulfill [his] responsibilities as a parent." (Decl. in Opp'n to Mot., Ex. I). The second grievance alleged that Raboy-Braunstein had "previously and continuously" made discriminatory decisions against

Plaintiff and that he felt harassed by what he characterizes as Raboy-Braunstein's inattention to his complaints against Breznak. (Id.)  Neither grievance alleged that Plaintiff was discriminated against because of his race or national origin. (Id.)

On January 28, 2003, Plaintiff attended a management-labor relations meeting held in response to his grievances, where a union organizer asked Raboy-Braunstein why she had changed Plaintiff's shift, and Raboy-Braunstein stated that an employee had made an allegation of sexual harassment against the Plaintiff.[25]  (Defs.' Ex. B (Pannikadavil Dep.) 110–113.)  After the January 28, 2003 meeting, Plaintiff also submitted a petition addressed to the Human Resources Department, dated February 14, 2003 and signed by various colleagues, stating that the "junior person's"[26] shift should have changed if any shift change was necessary. (Decl. in Opp'n to Mot., Ex. M.)

Approximately two months after the January 28, 2003 meeting, and after the petition dated February 14, 2003, Raboy-Braunstein notified Plaintiff, by memorandum dated March 26, 2003, that Defendants would accommodate his request to return to the 4 p.m. to 12 a.m. shift, effective April 9, 2003 (Defs.' Ex. N).  Breznak resigned from Bellevue prior to April 9, 2003.[27] (Defs.' Ex. D (Raboy-Braunstein Dep.) 29.)

Therefore, the record is clear that Defendants HHC and Raboy-Braunstein provided several avenues for Plaintiff to complain about allegedly hostile incidents in his work environment, and that HHC supervisors responded promptly to his complaints--often in Plaintiff's favor.  See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d at 715. Accordingly, there is no evidence to support Plaintiff's claim that Defendants are liable

---

[25] In 2004, there was a second sexual harassment charge alleged against Plaintiff, leading to another shift change that is not at issue here. (Defs.' Ex. B (Pannikadavil Dep.) 138–41.)

[26] Presumably this refers to Breznak.

[27] Also, as of December 2004, Raboy-Braunstein no longer worked for Bellevue. (Defs.' Ex. D (Raboy-Braunstein Dep.) at 7.)

for the alleged incidents involving Breznak and Malloy,[28] and Plaintiff's hostile work environment claim fails for failure to impute the alleged conduct of his co-workers to Defendants HHC or Raboy-Braunstein.[29]

### 2) Plaintiff's Failure to Establish That the Alleged Conduct Was Based on His Race or National Origin

Finally, as with any claim brought under Title VII, Plaintiff must show that an alleged hostile work environment existed "because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). See also Richardson, 180 F.3d at 436. Here, Plaintiff has not provided evidence to show that his race or national origin was the basis for the alleged conduct of his co-workers.[30] In fact, Plaintiff's own EEOC complaint shows that the co-workers who allegedly created the hostile work environment treated other people unpleasantly, not only Plaintiff or those of Plaintiff's race and national origin. Plaintiff's EEOC charge states:

> Even though [Ms. Molloy] was a lab technician, she always showed superiority over almost all the employees…and Ms. Breznak, **Generally, Ms. Breznak** frequently fights with co-workers and other employees including the doctors… A

---

[28] Plaintiff also alleges that Raboy-Braunstein's actions contributed to the hostile work environment, but he presents no evidence to support that claim. Therefore, none of Raboy-Braunstein's conduct in the record can be imputed to make Defendants liable for a hostile work environment claim. See Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995) ("when a supervisor wields the authority delegated to him by an employer either (a) to condition tangible job benefits affecting an employee on the employee's acceptance or rejection of the supervisor's sexual demands, or (b) to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is deemed to be that of the employer, and the employer's liability for that conduct is absolute.")

[29] Nor does the evidence show that Raboy-Braunstein discriminated against Plaintiff in warning him of possible termination, since she gave the same notice to Breznak. Furthermore, there is no evidence that the shift change ordered by Raboy-Braunstein was caused by discrimination based on Plaintiff's race or national origin. See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.")

[30] Plaintiff cites a single occasion when Evelyn Joseph, another employee, told him that Breznak, a non-party, had referred to him as "this Indian stink." (Defs.' Ex. C (Pannikadavil Dep. 12.))

[sic] soon as Ms. Breznak completed her six months probation, Ms. Breznak started fighting with co-workers.

(Decl. in Opp'n to Mot., Ex. A at bates stamp 002299, 00231) (bold in original).

When testifying about Breznak and Malloy, Plaintiff admitted "they have maybe ego problem." (Defs.' Ex. B (Pannikadavil Dep.) 144).

As to Defendant Raboy-Braunstein, Plaintiff also testified that she never made any inappropriate comments or gestures regarding his race or national origin. (Defs.' Ex. B (Pannikadavil Dep.) 122). Thus, Plaintiff has not met his burden to support a claim that the alleged conduct of Breznak or Malloy, or the Defendants' response to that alleged conduct, was motivated by his race or national origin. See Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.").

In considering the totality of the circumstances in the light most favorable to Plaintiff, the evidence shows that while some of the alleged incidents involving Breznak and Malloy appear to be inappropriate, no reasonable juror could conclude that any of the conduct allegedly committed by Plaintiff's co-workers can be imputed to Defendants, or that any these alleged incidents were based on Plaintiff's race or national origin. Therefore, the Defendant is entitled to summary judgment on his hostile work environment claim.

**D. Retaliation Claim**

Plaintiff argues that Defendants retaliated against him for his promotion requests and for filing claims of discrimination. (Pl.'s Mem. of Law in Opp'n. to Mot. at 12.) Plaintiff's submissions to the Court lack clarity in describing which incidents were retaliatory in nature, and which events were protected activities that triggered such retaliation. Therefore, the Court has analyzed the entire record to determine which of the adverse actions complained of could have been in retaliation for one of Plaintiff's protected activities. Schiano v. Quality Payroll Systems, 445 F.3d 597, 608 (2d Cir. 2006).

*Protected Activities*

Title VII makes it unlawful for an employer to retaliate against an employee for (1) opposing any activity which is prohibited by Title VII, or (2) or making a charge, testifying, assisting, or participating in any Title VII investigation, proceeding, or hearing. See also Yerdon v. Henry, 91 F.3d 370, 377 (2d Cir. 1996). Here, Plaintiff participated in protected activity by filing two grievances on December 26, 2002 alleging discrimination based on his shift change; by filing his EEOC charge on October 14, 2003; and by bringing this action on November 10, 2004.[31]

*Retaliatory Acts*

As noted above, the Supreme Court held in Morgan that "[d]iscrete acts such as… failure to promote…are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114. Thus, any allegedly retaliatory incidents prior to December 19, 2002, when the 300 day limitation period began, are

---

[31] Plaintiff's argument that his denials of promotion were in retaliation to his requests for promotion is circular reasoning and illogical. Also, under Title VII, request for promotion, standing alone, is not a protected activity.

time-barred.  In addition, because Plaintiff's first reviewable protected activity occurred

on December 26, 2002, when Plaintiff filed his two grievances, any allegedly retaliatory

acts must have occurred after that date.

       *a)  Failures to Promote*

       As discussed <u>supra</u>, Plaintiff requested promotion by letter dated September 10,

2003, and was told his request would be accommodated when a position became

available, which is not a rejection from an available position.  Plaintiff, however, also

asserts that he applied for promotion in December 2004 (Defs.' Ex. B (Pannikadavil

Dep.) at 69), and "around October 2005." (<u>Id.</u> at 70.)  Although Plaintiff's claims of

failure to promote in 2004 and 2005 are not included in his EEOC charge, the Court finds

that the December 2004 claims may be reasonably related to the EEOC Charge as

retaliatory acts. <u>See</u> <u>Butts v. New York Dep't of Hous. Preservation & Dev</u>., 990 F.2d

1397, 1402 (2d Cir. 1993) ("We see no reason why a retaliation claim must arise before

administrative proceedings terminate in order to be reasonably related. Rather, in such

situations, we have relaxed the exhaustion requirement based on the close connection of

the retaliatory act to both the initial discriminatory conduct and the filing of the charge

itself.")

       In their Rule 56.1 Statement, Defendants admit that, subsequent to Plaintiff's

filing of the EEOC Charge and the Complaint in this Court, Plaintiff applied for

promotions to the position of Associate Laboratory Microbiologist on two occasions--

once in 2004 and again in 2005.  Plaintiff testified, however, that in 2004 he applied for

the position in the *hematology* lab, but learned the day after the application deadline that

the position was not in the hematology lab, but rather in the *microbiology* lab.  (Defs.'

Ex. B (Pannikavadil Dep.) 74–75.)  Plaintiff gave the following testimony that Raboy-

Braunstein's associate director, Mr. Scott Fuller, retaliated against him by switching the

position:

> **Question**: Why do you feel Mr. Fuller retaliated against you?
> **Plaintiff**: Because when I ask for the promotion they switch the position to
> another laboratory even though I apply for that laboratory they call for the
> interview just for the formality.
> **Question**: And you think Mr. Fuller did this?
> **Plaintiff**: Yes, I ask him---
> **Question**: How do you know Mr. Fuller did this?
> **Plaintiff**: After that they deny me promotion.
> **Question**: How do you know that Mr. Fuller switched the position to another
> position in the department?
> **Plaintiff**:  He is the one told [sic] me that the position change [sic] to
> microbiologist.
> **Question**: Do you know he specifically switched the position?
> **Plaintiff**: That is only person that told me that.
> **Question**: He told you that; but do you know he specifically switched the
> position?
> **Plaintiff**: And not only that—
> **Question**: Do you know whether Mr. Fuller specifically switched the positions?
> **Plaintiff**: I don't know.
> **Question**: What is your basis for believing that Mr. Fuller retaliated against you?
> **Plaintiff**: They deny my promotion and then he call [sic] me for the counseling.
> **Question**: When—
> **Plaintiff**: Inappropriate counseling for excessive absenteeism
> …
> **Question**: And you interviewed for the position?
> **Plaintiff**: Then they call me for the Microbiology Lab not the hematology.  They
> change that position to a different lab for the White female they give to her.

(Defs.' Ex. C (Pannikavadil Dep.) at 31-32, 34.)

In December 2004, Plaintiff interviewed for the Associate Laboratory Microbiologist

with Dr. Hanna in the microbiology lab anyway.  (Defs.' Ex. B (Pannikavadil Dep.) 76.)

An employee, who is unidentified by the record, filled the position and Plaintiff testified

that Dr. Hanna informed him that he was not qualified for the position.  (Defs.' Ex. B

(Pannikavadil Dep.) 76.)

Plaintiff also testified that in approximately October 2005, a co-worker made him aware of a posting for Associate Laboratory Microbiologist in the pathology department. (Defs.' Ex. B (Pannikavadil Dep.) 70, 76–77.)  Plaintiff applied for the position by fax to the human resources director, not in person, because Plaintiff was on leave from work following a car accident, and he received no response to that application. (Id.)

*Analysis*

To defeat summary judgment in a retaliation claim, the <u>McDonnell-Douglass</u> burden shifting analysis applies. <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003) (citing <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996)).  First, to establish a prima facie retaliation claim, a plaintiff must demonstrate that (1) the plaintiff engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the alleged adverse employment action. <u>Schiano v. Quality Payroll Systems</u>, 445 F.3d 597, 608 (2d Cir. 2006); <u>see also</u> <u>Terry</u>, 336 F.3d at 141 (quoting <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998).  If Plaintiff establishes a prima facie case of retaliation, Defendants then have the burden of providing a legitimate, non-retaliatory reason for the adverse employment action; and finally, if Defendants meet their burden, then Plaintiff has the burden of showing that non-discriminatory reason is merely a pretext for retaliation. (Id.)

Here, Plaintiff's meets the first requirement of establishing a prima facie case of retaliation because he engaged in protected activity by filing his grievances in December 2002, filing an EEOC charge, and filing the Complaint in this action.  He also meets the second requirement in that the employer was aware of these actions, because a meeting

was held on January 28, 2003 in response to the grievances,[32] and Raboy-Braunstein attended that meeting.  Defendants also responded to the EEOC charge and the Complaint in this action, and thus were aware of them.  Plaintiff meets the third requirement because failure to promote is an adverse employment action.  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.").

Plaintiff meets the fourth requirement of establishing a causal connection between the protected activity and the failures to promote because of the close proximity of these events.  The Second Circuit has stated that "[c]ausation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  Morris v. Lindau, 196 F.3d at 110.  Here, Plaintiff's promotion denial sometime in December 2004 is in close proximity to the filing of the Complaint in this court on November 10, 2004 and it gives rise to an inference of retaliation, but the October 2005 promotion denial is not in close proximity and Defendants' motion to dismiss this claim is denied.

Defendants rebut the Plaintiff's alleged reasons for the promotion denials by offering non-retaliatory reasons.  First, Defendants state, without any supporting citation, that "[t]he person who was promoted [in 2004] has vastly superior experience and

---

[32] Plaintiff alleges that the January 28, 2003 labor relations meeting, at which he was falsely accused of sexual harassment, was retaliation the filing of his grievances. (Compl. ¶ 16.) The record shows, however, that this meeting was held to address his grievances, and was not an adverse employment action. In fact, Plaintiff's request to have his shift reinstated was granted as a result of this meeting.  (Def.'s Ex. N.) See also Galabya, 202 F.3d at 640. ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.")

seniority to plaintiff." (Defs.' Mem. at 9.) Defendants offer no evidence to identify who

was promoted in 2004 with "vastly superior" experience, and thus, Defendants have not

met their burden of establishing a non-retaliatory reason for the failure to promote in

2004.[33]   "Summary judgment is precluded where questions regarding an employer's

motive predominate in the inquiry regarding how important a role the protected [activity]

played in the adverse employment decision." Morris v. Lindau, 196 F.3d at 110.

Therefore, Defendant's motion for summary judgment as to the retaliation claim, insofar

as it relates to the December 2004 promotion, is denied.

### E. Allegations of a Discriminatory Policy at HHC

Finally, Plaintiff argues that there was policy of discrimination, retaliation, and

hostile work environment with regard to the Plaintiff, and that, in viewing the totality of

circumstances, Plaintiff's allegations are not time-barred because of this allegedly

ongoing discriminatory policy at HHC. (Pl.'s Mem. at 16-18.)  According to the Second

Circuit:

> [a]lthough the continuing violation exception is usually associated with a
> discriminatory policy, rather than with individual instances of discrimination, and
> although acts so isolated in time from each other or from the timely allegations as to
> break the asserted continuum of discrimination will not suffice, a continuing violation
> may be found where specific and related instances of discrimination are permitted by
> the employer to continue unremedied for so long as to amount to a discriminatory
> policy or practice…[h]owever, a plaintiff may not rely on a continuing violation
> theory of timeliness unless she has asserted that theory in the administrative
> proceedings.

---

[33] Defendants also state that the position for which Plaintiff applied in October 2005 had not been filled,
and thus Plaintiff cannot make out a prima facie case of retaliation. (Defs.' Mem. at 9.)  The Court,
however, finds that the alleged failure to promote in October 2005 is not in close enough temporal
proximity to the filing of this Complaint on November 10, 2004.  See Clark County Sch. Dist. v. Breeden,
532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's
knowledge of protected activity and an adverse employment action as sufficient evidence of causality to
establish a prima facie case uniformly hold that the temporal proximity must be very close.")

Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir. 2001) (internal citations omitted).

After reviewing the entire record and all of the incidents alleged by Plaintiff, the Court finds that there is insufficient evidence to raise an inference of a discriminatory policy by Defendants against the Plaintiff, or any other employee, based on race or national origin.[34]

In addition, the alleged incidents of discrimination were not "permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy." Fitzgerald v. Henderson, 251 F.3d at 360. As discussed supra, the record shows that Defendants investigated tensions among employees, held several meetings to address employee concerns, distributed memoranda on appropriate behavior standards at HHC, and ultimately enacted a shift change to address conflict in the work environment. Plaintiff admits that after meetings held by supervisors, Breznak apologized to him (Pannikadavil Aff. ¶ 31), and Plaintiff's request for his shift to return to the 4 p.m. to 12 midnight shift was granted as result of a labor relations meeting held in response to his grievances. (Defs.' Ex. N.) Accordingly, the evidence shows that no reasonable juror could conclude that there was a discriminatory policy or practice towards Plaintiff or individuals of Plaintiff's race or national origin at HHC.

---

[34] Plaintiff testified that Raboy-Braunstein has promoted minorities (Defs.' Ex. C (Pannikavadil Dep.) at 27-28), and the record shows that more racial minorities than whites were promoted to the position that Plaintiff seeks. (Decl. in Opp'n to Mot., Ex. H.)

## III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Doc.

# 31) is GRANTED in part and DENIED as to Plaintiff's retaliation claim for failing to

promote him in December 2004 because of his filing of the Complaint in this action.

IT IS SO ORDERED.

Dated: New York, New York
July 23, 2008

Robert P. Patterson, Jr.
U.S.D.J.

*Copy of this Opinion and Order sent to*:

**Counsel for Defendant**

Michael A. Cardozo
Corporation Counsel of the City of New York
100 Church St.
New York, NY 10007
Attn: Robert Katz
Tel:    212-788-0962
Fax:   212-788-0940

**Counsel for Plaintiff**

Kenneth W. Richardson
305 Broadway, Suite 1100
New York, NY 10007
Tel:    212-962-4277
Fax:   212-962-4294